UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMICA MUTUAL INSURANCE COMPANY,
As Subrogee of Paul Laukaitis and Amy Laukaitis,

DECISION AND ORDER

Plaintiff,

16-CV-6749L

v.

WHAC LLC d/b/a BMW OF ROCHESTER, and
BMW OF NORTH AMERICA, LLC,

Defendants.
_____

Amica Mutual Insurance Company ("Amica"), as subrogee of homeowners Paul and Amy Laukaitis, brings this action seeking coverage for fire damage to the Laukaitises' property which was allegedly caused by a defective vehicle purchased by the Laukaitises from defendant WHAC d/b/a BMW of Rochester, and manufactured by defendant BMW of North America (collectively, "BMW"). Defendants now move for summary judgment dismissing the complaint (Dkt. #36), on the grounds that there are no material facts in dispute and that the plaintiffs cannot, as a matter of law, establish their claims. Plaintiffs oppose that motion, and have also moved (Dkt. #35) to exclude the testimony of Mark Yeldham, a hybrid fact/expert witness disclosed by defendants. For the reasons discussed below, both motions are granted in part, and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

On Saturday, April 11, 2015, a house fire occurred at the residence of the Laukaitises, the proximate cause of which is disputed by the parties. Plaintiff alleges that the fire originated from a 2011 model BMW X3 vehicle (the "Vehicle"), which the Laukaitises had parked in the house's attached garage two days earlier, before departing for a vacation. Defendants disagree, pointing

to evidence that the fire originated in the adjacent kitchen instead, and contend that the fire may have been the result of arson.

The plaintiff thereafter commenced the instant action, requesting compensatory damages of $749,837.00, together with interest and costs. (Dkt. #1). Plaintiff claims that the defendants are liable for damages stemming from the Vehicle's negligent design or manufacturing, negligent failure to warn, and/or breach of express or implied warranties.

## DISCUSSION

**I.     Summary Judgment**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In determining a motion for summary judgment, the Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must construe all inferences from underlying facts in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**II.    Negligent Design**

In order to establish its negligent design claims, plaintiff will have to prove that defendants breached their duty to market safe products (by marketing a product that was defective, in that it did not have a reasonably safe design), and that the defective design was a substantial factor in causing plaintiff's injury. *See Voss v. Black & Decker Mfg. Co.*, 59 N.Y. 2d 102, 107 (1983). In proving the existence of a design defect, plaintiff must present evidence "that the product, as

designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id*. Defendants may rebut this evidence by showing that the product is safe – that is, that its utility outweighs its risks, and that the product's design reduces the risks to the greatest extent possible to retain its inherent usefulness. *Id*. Whether a product is defectively designed such that its utility outweighs its dangers is typically a question of fact for the jury. *Yun Tung Chow v. Reckitt & Colman, Inc.*, 17 N.Y.3d 29, 33 (2011).

Defendants allege that plaintiff's negligent design claims must fail, because plaintiff has failed to put forth any evidence, supported by competent expert opinion, concerning the feasibility and efficacy of an alternative design. Specifically, defendants urge that because none of plaintiff's proffered experts is an expert in "vehicle design," none of them is qualified to render an opinion concerning an alternative design.[1]

Defendants also argue that even if plaintiff could establish the existence and efficacy of a safe alternative design, plaintiff has failed to identify any specific, actionable defect in the Vehicle. Although plaintiff's vehicle fire expert S.D. Lyons testified that he believed the Vehicle caught fire due to "resistive heating" in a conductor connection situated behind the right bumper, just outside the engine compartment, which would have been exposed to corrosion and road materials due to its placement in the vehicle, he conceded in his deposition that he had no physical evidence from the Vehicle itself concerning the extent of corrosion prior to the fire. Instead, he had examined other exemplar vehicles of the same make and model, and having observed corrosion in the same area on those vehicles, believed that such corrosion would have existed on the subject

---

[1] Defendants have not moved to exclude the testimony of any of plaintiffs' proffered experts: defendants simply argue that none of plaintiffs' experts are sufficiently qualified to render an opinion on the specific issue of the existence and efficacy of a safer alternative vehicle design.

Vehicle. Defendants point out that Mr. Lyons testified that corrosion and loosening are a normal occurrence in all vehicles and not the result of a design or manufacturing defect.

The fact that Mr. Lyons' testimony includes some level of speculation does not, however, undermine plaintiff's position to the extent that defendants suggest. Regardless of whether corrosion or loosening of conductors is a normal occurrence in all vehicles, the alleged defect here is not corrosion or loosening itself. Rather, the alleged defect concerns the defendant's specific *placement* of the conductor in an exposed area, where corrosion and/or loosening could make it susceptible to an electrical fire.

Unfortunately, plaintiff's design defect claim must nonetheless be dismissed because plaintiff has utterly failed to raise a genuine issue of material fact on the second element of its design defect claim – specifically, that there was a technically feasible way to design the vehicle in such a way that the conductor at issue would be shielded from corrosion. Plaintiff has made no attempt to even address this element, and offers no competent evidence of a reasonable alternative design.

"Ordinarily, a plaintiff needs expert testimony in order to meet [its] burden" to demonstrate the existence of a feasible alternative design, such that "the absence of expert testimony is fatal to a case unless a reasonable alternative design is both obvious to, and understandable by, a layperson." *Guarascio v. Drake Assocs.*, 582 F. Supp. 2d 459, 463 (S.D.N.Y. 2008). *See also Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 437 (E.D.N.Y. 2013), *aff'd*, 559 Fed. Appx. 11 (2d Cir. 2014). Here, it is undisputed that motor vehicle design is a complex field, and the myriad factors affecting placement of various automobile components – including electrical conductors and connection points – are not readily understood by laypeople. *See e.g. Guarascio*, 582 F. Supp. 2d 459 at 463-64 (collecting cases, and noting that sufficient complexity to require expert

4

testimony has been found for products ranging from power saws and motor vehicle air bags to steak sauce bottles and ski bindings). Plaintiff offers no evidence of any kind concerning the existence or feasibility of an alternative design in this matter, and as such, plaintiff's design defect claim must be dismissed.

**III.     Negligent Manufacturing**

The elements of a manufacturing defect claim which plaintiff must prove are: (1) a defect which existed at the time the product left the defendant's control; (2) a causal connection between the defect and the injury; and (3) damages. *Angona v. City of Syracuse*, 118 A.D.3d 1318 (4th Dept. 2014).

With respect to a manufacturing defect, the specific defect need not be identified where the product is, as here, complex: proof of the necessary facts may be circumstantial in nature and a defect may be inferred by proof that the product did not perform as intended by the manufacturer. *See Nelson v. Ranger, Inc.*, 2009 U.S. Dist. LEXIS 107014 at *12-*13 (N.D.N.Y. 2009); *Coley v. Michelin Tire Corp.*, 99 A.D.2d 795 (2d Dept. 1984). *See also*, *Speller ex rel. Miller v. Sears, Roebuck and Co.*, 100 N.Y.2d 38 (2003) (plaintiff not foreclosed from proving a defect in a refrigerator via circumstantial evidence, to rebut manufacturer's evidence suggesting an alternative cause for the kitchen fire at issue).

Here, all of plaintiff's expert witnesses who considered the origin of the fire – vehicle fire expert S.D. Lyons, cause and origin expert Timothy Doyle, electrical engineering expert Scott Phillips, and Monroe County fire investigator Peter Henry (who was not specifically retained by plaintiff, but investigated the origin of the fire in the ordinary course of his duties) – either opined that the fire started inside the garage in general, or inside the Vehicle in particular. Plaintiff's

5

experts also testified (and common sense dictates) that automobiles should not spontaneously catch fire and burn down surrounding structures, nor do manufacturers intend that they do so.

Defendants nonetheless argue that plaintiff's claims concerning a defect must be dismissed because plaintiff cannot rebut defendants' alternative explanation for the fire: arson in the adjacent kitchen, rather than a vehicle fire in the garage. Defendants point to burn patterns allegedly indicating that the fire spread east and west into other rooms from the kitchen, as well as evidence that the kitchen refrigerator was "attacked frontally" (from the center of the kitchen, toward the garage) instead of from the direction of the garage, floor-level burning on the south side of the kitchen (away from the garage) that was allegedly less severe closer to the garage, higher levels of damage to kitchen appliances (e.g., the kitchen refrigerator) than to garage appliances (e.g., the garage refrigerator), unexploded propane tanks in the garage, the structural failure of the kitchen ceiling but not the garage ceiling, intact insulation product lining directly above the Vehicle that was not entirely consumed, and burn pattern trails on a kitchen mat and island shelf located over kitchen chairs, which are allegedly inconsistent with drop-down debris but instead suggest the placement of flammable liquids on the floor and/or chairs.

The interpretation of this evidence is strenuously disputed by plaintiff and its experts, whose analysis, after inspecting the scene of the fire, was that it did *not* start in the kitchen and that there was no evidence of arson.

"To successfully rebut an alternative theory of causation and survive summary judgment, the plaintiff is not required to produce evidence which definitively excludes all other possible causes. Rather, the plaintiff need only establish . . . 'a triable question of fact by offering competent evidence which, if credited by the jury, [i]s sufficient to rebut . . . alternative cause evidence.'" *Hayes v. New York*, 2013 U.S. Dist. LEXIS 133766 at *37 (N.D.N.Y. 2013) (*quoting Norton v.*

*Albany Cnty. Airport Auth.*, 52 A.D.3d 871, 874 (N.Y. App. Div. 3d Dept. (2008)). Given that plaintiff has countered defendants' proffered expert witnesses with expert reports and testimony of its own, I find that plaintiff has sufficiently rebutted the defendants' explanation for the subject fire for purposes of the instant motion. Because there remain material questions of fact concerning whether the fire was the result of a defectively-manufactured product or resulted from some other cause, summary judgment on plaintiff's manufacturing defect claim is inappropriate.

## IV.     Negligent Failure to Warn

Defendants urge that plaintiff's negligent failure to warn claim must fail, since plaintiff has failed to demonstrate the existence of a defect that would trigger such a duty, or to demonstrate that a defect was the proximate cause of the fire.

The adequacy of a manufacturer's instructions and warnings "is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment." *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997).

For the reasons stated above, the Court concludes that material questions of fact concerning the existence of a defect, and the proximate cause of the fire, preclude the "drastic remedy" of summary judgment on plaintiff's negligent failure to warn claim.

## V.      Breach of Warranty

Defendants argue that plaintiff's breach of express and implied warranty claims must also be dismissed. With respect to the express warranty claim, defendants contend that the applicable BMW Certified Pre-Owned Limited Warranty ("CPO Warranty") is limited to repair costs of certain covered components, but expressly excludes component failures caused by "fire" and/or "corrosion" damage. (Dkt. #46-1 at 6-7). Given that part and parcel of plaintiff's underlying

7

claim is that a defective electrical conductor became damaged by corrosion and led to a fire, plaintiff's claim arising out of the CPO Warranty is clearly excluded, and must be dismissed.

With regard to the implied warranty claim, defendants also argue that the plaintiffs have failed to demonstrate a defect, prove that the defect existed when the Vehicle was purchased, or prove that the defect proximately caused the fire at issue. *See generally Teixeria v. St. Jude Med. S.C., Inc.*, 193 F. Supp. 3d 218, 226 (W.D.N.Y. 2016) (breach of implied warranty claim requires proof of a defect, existing at the time of delivery, which proximately caused the claimed damages).

Once again, resolution of such material questions of fact (e.g., whether the fire at issue was caused by a defect in the Vehicle, etc.) is for the jury: they may not be decided by the Court as a matter of law. As such, the Court declines to dismiss plaintiff's breach of implied warranty claim.

## VI. Admissibility of Mark Yeldham's Testimony

In a separate motion, plaintiff has moved to preclude defendants from offering the testimony of Mark Yeldham ("Yeldham"), to the extent that he is expected to give an opinion as to the cause of the subject fire, as defendants have not properly disclosed him as an expert witness, disclosed his qualifications, or submitted an expert report by him.

Defendants argue that Yeldham is a "hybrid" employee/expert pursuant to Fed. R. Civ. Proc. 26(a)(2)(C), and is thus not required to provide an expert report.

The determination of whether a witness is considered an expert and must produce disclosures and reports consistent with Rule 26(a)(2)(B)(i)-(vi) "lies in the source of the facts on which the witness's expert opinion is based . . . To the extent that a witness' opinion is based on facts learned or observations made in the normal course of duty, the witness is a hybrid and need not submit a report . . . . The same witness, however, must submit a report regarding any opinions formed specifically in anticipation of the litigation, or otherwise outside the normal course of a

duty." *Hutch Enters. v. Cincinnati Ins. Co.*, 2019 U.S. Dist. LEXIS 137593 at *36-*37 (W.D.N.Y. 2019) (*quoting Meredith v. International Marine Underwriters*, 2011 U.S. Dist. LEXIS 41619 at *11-*12 (D. Md. 2011)). Hence, Yeldham's "proposed opinions may only encompass the facts made known to him during the course of his [duties] . . . for him to be considered a non-retained expert." *Hutch Enters.*, 2019 U.S. Dist. LEXIS 137593 at *37 (*quoting Chambers v. Fike*, 2014 U.S. Dist. LEXIS 98235 at *12 (D. Kan. 2014)).

Yeldham testified that he is employed by BMW as a manger in its Special Product Investigation Department, and that he has previous experience investigating alleged fires in BMW vehicles. His qualifications have not been disclosed by defendants, although a curriculum vitae was apparently provided to plaintiff's counsel at Yeldham's deposition.

As plaintiff points out, Yeldham did not visit or investigate the scene of the fire, did not attend any laboratory examinations of the evidence, and did not personally view the Vehicle or the subject premises: his testimony is based on his review of photographic evidence and reports from individuals who did inspect the Vehicle. However, this review was undertaken in his course of employment as an investigator of BMW vehicle fires, for the purpose of rendering an opinion as to whether the fire originated inside the Vehicle. Yeldham testified at his deposition that he ultimately concluded that there was no "vehicular evidence" supporting the idea that the subject fire originated in the Vehicle.

On balance, the Court finds that to the extent that Yeldham intends to testify concerning his investigation of the Vehicle, his knowledge of its design, and his interpretation of the evidence concerning fire damage to the Vehicle – that is, "facts learned or observations made in the normal course of [his duties]" – he may testify as a hybrid fact/expert witness. To the extent that his opinions were formed based upon second hand reports and photographs of the Vehicle rather than

an in-person inspection, those factors may go to the weight of his testimony, rather than to its admissibility.

However, defendants have not established that Yeldham is sufficiently qualified to testify as a fact/expert witness with respect to structure fire investigation and analysis in general or the home in which the subject fire occurred in particular, as these areas appear to lie outside of Yeldham's professional duties and training, as well as the course of his investigation of the Vehicle. *See generally* Dkt. #35-3 (Defendants' Fed. R. Civ. Proc. 26(a)(2)(C) Disclosure for Mark Yeldham). In fact, although Yeldham was questioned at his deposition about his interpretation of burn patterns inside the subject home, he specifically disclaimed any expertise in the analysis of structural fires, and emphasized that his expertise is specific to the investigation of vehicles. (Dkt. #42-1 at 78, 205).

As such, the Court concludes that Yeldham is qualified to testify as a hybrid fact/expert witness concerning his investigation of the subject Vehicle in the regular course of his job duties, including whether the evidence of fire damage to the Vehicle suggests (or disproves) that the fire originated therein. However, defendants have not shown that he is qualified to testify as a hybrid witness concerning the meaning and interpretation of fire damage outside of the Vehicle, including whether damage to the surrounding structure suggests (or disproves) that the fire originated in some other area of the house. Because opinions relating to structure fires and/or the interpretation of evidence of structural damage are outside of Yeldham's demonstrated professional duties and personal knowledge, any testimony in that vein would be previously-undisclosed expert testimony, and is therefore precluded.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #36) is granted in part and denied in part. Plaintiff's design defect and breach of express warranty claims are dismissed, and plaintiff's claims alleging a manufacturing defect, failure to warn, and breach of implied warranties remain. Plaintiff's motion to exclude the testimony of Mark Yeldham (Dkt. #35) is likewise granted in part and denied in part, as described above: Yeldham may testify as a hybrid fact/expert witness with respect to his investigation of fire damage to the subject Vehicle, but is precluded from testifying as an expert witness concerning structure fires and/or the interpretation of structural fire damage.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 20, 2020.