UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMICA MUTUAL INSURANCE COMPANY,
As Subrogee of Paul Laukaitis and Amy Laukaitis,

                       Plaintiff,

                    v.

WHAC LLC d/b/a BMW OF ROCHESTER, and
BMW OF NORTH AMERICA, LLC,

                       Defendants.

_____

<u>DECISION AND ORDER</u>

16-CV-6749L

     Amica Mutual Insurance Company ("plaintiff"), as subrogee of homeowners Paul and Amy Laukaitis (the "Laukaitises"), brought this action seeking reimbursement for insurance proceeds paid for extensive fire damage to the Laukaitises' property. The fire was allegedly caused by a defective vehicle, purchased by the Laukaitises from defendant WHAC d/b/a BMW of Rochester, and manufactured by defendant BMW of North America (collectively, "defendants"). Defendants now renew a prior motion made during trial for judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50(b). (Dkt. #85). The motion is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

     On Saturday, April 11, 2015, a house fire occurred at the residence of the Laukaitises, the cause and origin of which was disputed by the parties. Plaintiff alleged that the fire originated and spontaneously ignited at the front passenger side of a 2011 model BMW X3 vehicle ("the

vehicle"), which the Laukaitises had parked in the house's attached garage two days earlier before departing for a vacation.[1]

Defendants disagreed, suggesting that the fire originated in the adjacent kitchen, and may have been the result of arson.

The plaintiff thereafter commenced the instant action, requesting compensatory damages of $749,837.00, together with interest and costs, for the money paid to the Laukaitises pursuant to the terms of their homeowner's policy. (Dkt. #1).

From September 20, 2021 through September 28, 2021, a jury trial was held to decide plaintiff's claims of manufacturing defect, negligent failure to warn, and breach of warranty. At the close of proof, defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50(b). That motion was denied. (Dkt. #80).

After the jury was empaneled, but before proof commenced, the Court gave the jury some standard preliminary instructions. Those instructions included a listing of the elements of the three causes of action presented to the jury: manufacturing defect, breach of implied warranty and failure to warn.[3]  Counsel made no objection to any of the Court's preliminary instructions.

As the trial neared completion, the Court reminded counsel several times to timely provide it with requested instructions for the Court's final charge. In addition, the Court provided counsel with a draft verdict form, prepared by the Court, delineating each of the three pleaded causes of action.

---

[1] Such an event is apparently not unique. *See* Defendants' motion *in limine* (Dkt. #61) seeking to preclude plaintiff from introducing at trial a 2019 ABC news story describing numerous cases throughout the country where spontaneous fires had allegedly occurred in BMW vehicles, causing significant damage. In fact, defendants' witness, Mark Yeldham, was a long-time BMW employee whose job involved the investigation of alleged BWM vehicle fires.

[3] In a prior Decision and Order, the Court had dismissed plaintiff's claims of design defect and breach of express warranty. (Dkt. #47).

Toward the end of proof, counsel advised the Court that they were working together to fashion their own proposed verdict form, as well as a stipulation governing several undisputed matters.

At the end of proof, the parties announced that they had reached an agreement as to a proper verdict form, in addition to several stipulations. The stipulation (Dkt. #79, annexed hereto as Exhibit 1) was crucial in many respects. Significantly, the parties stipulated that plaintiff need not prove the amount of damages incurred: should plaintiff prevail, the insurance proceeds plus interest in the amount of $872,762.02 would be awarded to plaintiff, and the jury would not be required to make any finding on damages. (Exh. 1 at ¶1).

Second, the parties agreed to dismiss the local BMW dealer from the case, stipulating that if the jury rendered a verdict in favor of plaintiff, BMW of North America would accept liability. (Exh. 1 at ¶3). As it turned out, there was no claim or suggestion at trial that the local BMW dealer did anything unique to cause the incident.

And, most significantly, relative to the pending motion for judgment under Rule 50, counsel stipulated that the sole factual issue to be presented to the jury for resolution was whether plaintiff had proven by preponderance of the evidence that the fire commenced in the vehicle. (Exh. 1). The stipulation, which was read to the jury, stated: "The parties agree on a single instruction covering all substantive charges as follows: 'Do you find by a preponderance of the evidence that cause and origin of the fire was in the right front area of the BMW vehicle? Yes or No.'" (Exh. 1 at ¶6).

The parties thereafter modified the stipulation slightly, and, a simple, straightforward verdict form was prepared and submitted to the jury consistent with it. The final version of the verdict form to which the parties stipulated, and to which neither party objected, read as follows:

"Do you find, by a preponderance of the evidence, that the cause and origin of the fire was in the right front passenger side of the BMW vehicle? YES [or] NO". (Dkt. #81).

The jury deliberated, and on September 29, 2021, reached a unanimous verdict determining that the subject fire's cause and origin was in the right front passenger side of the vehicle. (Dkt. #81). Judgment was accordingly entered, finding BMW liable on all three of plaintiff's claims, and awarding damages in the amount to which the parties had stipulated. (Dkt. #84).

## DISCUSSION

### I.   Standard Under Fed. R. Civ. Proc. 50(b)

A party seeking judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50(b) "bears a heavy burden." *Concerned Area Residents for the Env't v. Southview Farm*, 34 F.3d 114, 117 (2d Cir. 1994) (citing *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir. 1988), *cert. denied*, 489 U.S. 1034, (1989)). In ruling on such a motion, the Court must "consider the evidence in the light most favorable to the [nonmoving party] and . . . give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence." *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir. 1988). In considering the motion, the Court "may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Walsh v. City of New York*, 742 F. App'x 557, 561 (2d Cir. 2018) (quoting *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010)).

To grant a renewed judgment as a matter of law, the Court must find that there is "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [it].'" *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992) (quoting *Mattivi v. South African*

4

*Marine Corp.*, *"Huguenot,"* 618 F.2d 163, 168 (2d Cir. 1980)). This burden is "particularly heavy" where, as here, "the jury has deliberated in the case and actually returned its verdict." *Cross v. N.Y.S. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005).

## II.    Trial Stipulations

Again, the parties' joint trial stipulations (Exh. 1) were crucial in resolving several issues that would otherwise have been presented to the jury. Instead, the parties, including BMW, chose another tact. It is clear from the parties' discussions with the Court, and the stipulation into which the parties entered, that the week-long trial boiled down to one factual issue, and only one factual issue: whether plaintiff had proved, "by a preponderance of the evidence, that the cause and origin of the fire was in the right front passenger side of the BMW vehicle" (Exh. 1).

Defendant BMW got precisely what it requested by stipulating to this special verdict form, and by agreeing that if the jury answered the question in the affirmative, the verdict would be in favor of the plaintiff on all three causes of action. (Dkt. #79, ¶6). It cannot be heard now to object to that procedure. BMW was, in part, the architect of the jury's verdict and, although it now wishes the verdict were otherwise, there is no good faith basis to challenge it as long as there is sufficient evidence to support the jury's finding that the cause and origin of the fire was in the right front passenger side of the vehicle.

BMW could have insisted that the jury return a verdict based on the specific elements of each of the three causes of action. At the beginning of the case, the Court instructed the jury on those precise elements. But, as the proof developed, virtually all of the witnesses discussed the origin and cause of the fire. BMW then specifically stipulated that a single question, concerning the cause and origin of the fire, would cover "all substantive charges" that plaintiff had pleaded. The matter could not have been clearer or more succinct. In fact, counsel for both sides during

closing arguments spent virtually their entire allotted time discussing the testimony as it related to the cause and origin of the fire.

The Federal Rules of Civil Procedure specifically provide for the use of a special verdict form. Rule 49(a) states that a "court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1310 (2d Cir. 1993) (a special verdict's purpose is "to identify the basis for the jury's verdict, and thus to avoid confusion, appellate uncertainty, and the need for additional proceedings"). I find no error in the stipulated verdict form, or in the factual or legal conclusions and the implicit chain of syllogistic reasoning upon which it was grounded. But, more to the point, this special verdict form was not the Court's creation, nor was it foisted upon the parties. Rather, it represented counsels' own determination as to the best way to present their case to the jury.

Because the subject fire had consumed much of the vehicle, plaintiff was permitted to show its cause and origin through circumstantial evidence that the fire began in the vehicle, and not somewhere else or by some other cause. Regardless of whether the Rule 50 motion is examined through the lens of the specific elements of plaintiff's claims as set forth above, or by reference to the single question posed by the special verdict form, the same result is reached: if there was sufficient evidence for the jury to find that the fire began in the vehicle, then there was sufficient evidence to support a finding for plaintiff on all of its claims, just as the parties stipulated. The additional factual and legal elements that would otherwise have been determinative of plaintiff's claims – that if a parked BMW spontaneously catches fire it is not performing as "intended by the manufacturer," that defendants had not warned the Laukaitises about such a possibility, and that the vehicle's condition was not altered in any relevant way after it left defendants' hands – were

undisputed even before trial, and were established by unchallenged evidence offered during the trial.

Again, to the extent that defendants' arguments could be read to suggest that the verdict form presented to the jury should have asked more than it did, they waived their right to challenge it by stipulating to it and by raising no objection to it at trial. *See Emamian v. Rockefeller Univ.*, 971 F.3d 380, 390 (2d Cir. 2020)(failure to object to special verdict questions prior to their submission to the jury waives the objection); *Zaratzian v. Abadir*, 694 Fed. App'x 822, 824 (2d Cir. 2017)(where a party has failed to object to a verdict form at trial, the party has no right to object to its formulation on appeal, absent some fundamental error). Defendants coauthored a single-question special verdict form, and stipulated that it was sufficient to dispose of the entire case. They cannot now be heard to complain that the jury failed to make other and further findings, far beyond the scope of the single question the jury was asked to answer.

I concur with the parties that the single factual question posed to the jury was sufficient to indicate, after undisputed elements were removed from the analysis, whether plaintiffs had met their burden to demonstrate, by a preponderance of the evidence, either that defendants were liable with respect to all three of plaintiff's claims, or that defendants were not liable with respect to any of them.

## III.    The Jury's Verdict

Defendants argue that, based on the evidence presented at trial, no reasonable juror could have concluded that the fire's cause and origin was in the front passenger side of the subject vehicle, to the exclusion of all other causes and locations. For example, defendants had argued at trial that certain burn patterns suggested that the fire had originated in the kitchen of the home, adjacent to the garage, and might have been the result of arson.

7

The Court disagrees. The jury's verdict was neither speculative nor groundless. This matter pitched one side's experts squarely against the other's. Qualified expert witnesses from both sides testified, based on their observation and/or review of the physical and photographic evidence in the case, as to their opinions concerning the cause and origin of the fire. Plaintiff's vehicle fire expert, Steven Dennis Lyons, testified that he inspected the vehicle, and believed that a short within its electrical wiring had caused the fire. Origin and cause investigator Timothy N. Doyle testified, based on his investigation, that the fire originated somewhere in the front of the garage, and not inside the Laukaitis home. Electrical engineer Scott E. Phillips testified that he evaluated the wiring and electrical equipment in the Laukaitis home, and was able to rule out all potential electrical causes of ignition in the garage and kitchen as causes of the fire, except for the electrical equipment in the BMW.

BMW offered its own experts, with contrary opinions. Special Products Investigation Manager Mark Yeldham, a BMW employee, testified that he reviewed investigation reports and photographic evidence of the vehicle, and concluded that the fire did not originate in the vehicle, but "attacked" it from above and from the front. Yeldham admitted though that he did not visit the scene or inspect the vehicle. Structural fire expert Peter Davis testified that he inspected the Laukaitis home and reviewed photographs of the scene, and concluded, based on burn patterns and other indicators, that the fire had started in the kitchen of the house, and spread to the garage through ventilation points.

The expert witnesses' interpretations of such matters as burn patterns, electrical damage, the extent and likely order of incineration of the subject vehicle and rooms in the surrounding structure, and whether the arrangement of certain parts within the vehicle could have caused or contributed to the fire, predictably differed. In short, the trial "was a classic battle of experts. The

jury watched and heard . . . experts give conflicting testimony, and it credited [some experts over others]. That is what juries do." *Free v. Baker*, 469 Fed. Appx. 786, 794 (11th Cir. 2012). In such circumstances, the Court must "defer[] to the jury's assessment of credibility." *Howes v. Great Lakes Press Corp.*, 679 F.2d 1023, 1031 (2d Cir. 1982) (where the issue to be decided is "simply a battle among expert witnesses," a court does not have the discretion to make its own credibility assessments of those witnesses on a Fed. R. Civ. Proc. 50(b) motion for judgment: "deference must be given to the jury's assessment of credibility").[4]

Indeed, the Court observes that in addition to the expert testimony, there was other evidence by which a reasonable juror could have concluded that the subject fire began in the front passenger side of the vehicle, and did not originate in any other location or by any other cause. Peter Henry, an impartial fire marshal employed by the Monroe County Sheriff's Office, Fire Bureau, inspected the garage and conducted a fire investigation in the course of his duties. Mr. Henry determined, and testified, that the front, passenger-side area of the vehicle was the cause

---

[4] Defendants make much of their alleged discrediting of plaintiff's expert, Timothy Lyons, arguing that neither the evidence nor his testimony ultimately supported his theory that corrosion of specific electrical elements in or near the engine compartment of the vehicle led to the fire. Defendants argue that because Lyons's testimony was insufficient to demonstrate that the fire originated in the particular bit of wiring about which he testified, plaintiff's claims fail as a matter of law.

Defendants miss the mark. In demonstrating the existence of a "defect" for purposes of its manufacturing defect, breach of implied warranty, and failure to warn claims, plaintiff was never required to identify or prove which precise component or piece of wire in the vehicle caused the fire. Because the vehicle had been largely consumed in the conflagration, the existence of a defect could be established through circumstantial evidence that the vehicle had not performed as intended by the manufacturer – that is, that the vehicle had ignited all by itself while it was parked and not running, a circumstance which BMW conceded it did not intend. As discussed above, with or without Lyons's testimony, there was ample evidence by which the jury could conclude that the fire's cause and origin were in the front passenger side of the vehicle and not in some other location, or by some other cause. *See Jarvis v. Ford Motor Co.*, 283 F.3d 33, 45-46 (2d Cir. 2002)(district court erred when it granted defendant's Rule 50 motion on the basis that plaintiff's expert failed to prove that a specific cruise control malfunction caused the subject accident, because "if plaintiff has proven that the product has not performed as intended and excluded all causes of the accident not attributable to defendant, the fact finder may, even if the *particular* defect has not been proven, infer that the accident could only have occurred due to some defect in the product . . .")(emphasis added)(quoting *Halloran v. Virginia Chemicals, Inc.*, 41 N.Y.2d 386 (N.Y. 1977)). *See also Zsa Jewels, Inc. v. BMW of N. Am.*, 419 F. Supp. 3d 490, 509 (E.D.N.Y. 2019)("[a] plaintiff who cannot prove a specific design or manufacturing defect through expert testimony or other direct evidence may nonetheless prevail on the basis of circumstantial evidence alone").

and origin of the fire, and that he'd observed no indication of arson. Similarly, photographic evidence of the fire damage could reasonably be interpreted to show a conspicuously higher concentration of consumed materials and damage in the front, passenger-side area of the vehicle than in other parts of the vehicle and surrounding structure that were impacted by the fire, thus suggesting that the fire had originated there.

In short, construing all of the evidence in plaintiff's favor, the jury's verdict was well-supported by evidence adduced at trial, and was neither speculative nor conjectural. Defendants' renewed motion for judgment as a matter of law is denied.

## IV.   Defendants' Additional Arguments

Defendants also argue that they were entitled to judgment as a matter of law with respect to the plaintiff's manufacturing defect claim, because plaintiff's expert, Timothy Lyons, "admitted" at trial that there was no manufacturing defect in the vehicle, when he testified that the fire originated in the vehicle due to the "environment" of a corroded electrical connection, and not because the vehicle had been manufactured defectively. (Dkt. #85-1 at 5).

Defendants are incorrect. Mr. Lyons was testifying as an expert witness concerning motor vehicle fires, and his theory as to how the exposure of certain components in the vehicle to corrosive forces had, in his view, caused the fire to originate there. He was not a legal expert, qualified to render an opinion on an ultimate question of law, nor was he instructed on the legal definition of the term "manufacturing defect." Indeed, if the jury had relied on his legal conclusion as proof of an ultimate issue of law, it would have been improper. *See e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)("[t]his circuit is in accord with other circuits in requiring the exclusion of expert testimony that expresses a legal conclusion"); *Pass & Seymour, Inc. v. Hubbell, Inc.*, 532 F. Supp. 2d 418, 437 (N.D.N.Y. 2007)("expert testimony which embraces a legal

conclusion should be excluded"); *Victor G. Reiling Assocs. & Design Innovation v. Fisher-Price, Inc.*, 406 F. Supp. 2d 171, 173 n.2 (D. Conn. 2005)("[t]he law of this circuit is that while an expert may provide an opinion to help a jury or judge understand a particular fact, he may not give testimony stating ultimate legal conclusions based on those facts")(internal quotations and citations omitted).

In short, BMW cannot have it both ways. It cannot "have its cake, and eat it too." BMW cannot stipulate that one and only one special verdict question sufficed to dispose of all three claims asserted at trial, and later complain that certain elements of a claim were not sufficiently established.

BMW could have insisted on a more specific verdict form, but it did not. It got exactly what it requested and, as discussed, there was ample evidence, if credited by the jury, to support the jury's finding on the one question presented to it.

I have considered the remainder of the arguments raised by defendants, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I find that the defendants have failed to demonstrate that no reasonable juror could have reached the verdict that they did in this case, or that the verdict was speculative or conjectural. Defendants' renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. Proc. 50(b) (Dkt. #85) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 28, 2022.

EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMICA MUTUAL INSURANCE COMPANY )
As Subrogee of Paul Laukaitis and Amy )
Laukaitis, )
                  Plaintiff, )
v. )
 )
WHAC LLC, d/b/a BMW OF ROCHESTER, )
and BMW OF NORTH AMERICA, LLC, )
               Defendants. )
 )

Docket No.:  6:16-cv-06749-DGL-MWP

**TRIAL STIPULATIONS**

      NOW COME the parties to the above-captioned matter and hereby respectfully stipulate and agree that:

1. If a verdict is entered in favor of the Plaintiff against either or both Defendant(s), then a finding shall enter that the stipulated damages are as follows: **$872,762.02** plus pre-judgment interest; and Plaintiff need not present proof of same at trial. The jury will be asked to determine the issue of liability only.

2. It shall be read to the jury that: "Plaintiff Amica Mutual Insurance Company, under the subject homeowner's insurance policy, was required to provide coverage to the Laukaitises in the event that the fire was caused by the malicious act or vandalism of a third-party."

3. Defendant WHAC LLC d/b/a BMW of Rochester ("BMW of Rochester"), is hereby voluntarily dismissed from this action without prejudice and will be dismissed with prejudice after judgment is entered, pursuant to Fed. R. Civ. P. 41(a).

4. The sales, service, and CPO documents of BMW of Rochester for the subject vehicle, may be offered into evidence without objection.

5. The parties agree on a single instruction covering all substantive charges as follows: "Do you find by a preponderance of the evidence that cause and origin of the fire was in the right front area of the BMW vehicle? Yes or No."

6. The parties agree that if the answer is 'NO,' then a verdict will enter for the Defendant on all counts. If the answer is 'YES,' then verdict will enter for the Plaintiff on all counts.

Dated: September 20, 2021

Respectfully submitted,
Plaintiff,
Amica Mutual Insurance Company as subrogee of Paul Laukaitis and Amy Laukaitis
By its attorneys,

*/s/ Nelson E. Canter*
Nelson E. Canter, Esq.
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016
(212) 448-1100
ncanter@mclaughlinstern.com

*/s/ John A. Donovan III*
John A. Donovan III, Esq.
SLOANE AND WALSH, LLP
One Boston Place
201 Washington Street, Ste. 1600
Boston, MA 02108
(617) 523-6010
jdonovan@sloanewalsh.com

Respectfully submitted,
Defendants,
BMW of North America, LLC and
WHAC LLC d/b/a BMW of Rochester
By its attorneys,

*/s/ Joseph Kim*
Biedermann Hoenig Semprevivo
A Professional Corporation
One Grand Central Place
60 East 42nd Street, 36th Floor
New York, NY 10165
(646) 218-7647
joseph.kim@lawbhs.com